# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK M. SAULTZ,<br>aka "White Boy Pat"<br><br>Defendant. | CASE NO. 2:22-CR-117(02)<br><br>JUDGE EDMUND A. SARGUS |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through undersigned counsel, hereby submits its Sentencing Memorandum in advance of the sentencing hearing for the Defendant, Patrick Saultz. For the reasons that are discussed below, the government respectfully submits that a sentence within the agreed upon range in this case appropriately considers all of the factors that this Court is to take into account in fashioning a sentence. The government further suggests that Defendant's lengthy criminal history and crimes involving drug and sex trafficking call for a term of supervised release of at least 10 years.

## BACKGROUND

On July 25 2023, the defendant entered a plea of guilty to a Superseding Information that charged him in Count One with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances within 1,000 Feet of an Elementary School, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 841(b)(1)(A)(vi), 841(b)(1)(C), 841(b)(2), 846, and 860, in Count Two with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) and 1594(c), and in Count Three with Concealment Money Laundering, in

violation of 18 U.S.C. § 1956(a)(l)(B)(i). The Rule 11(c)(1)(C) agreement called for a term of incarceration of between 324-360 months and a term of supervised release of at least 5 years. The plea was entered pursuant to plea agreement that contained, as an attachment thereto, an agreed factual statement of the offense conduct in support of the defendant's guilty plea.

In that statement of facts, the defendant admitted that in 2021, numerous federal law enforcement agencies initiated an investigation into a Drug Trafficking Organization (DTO) operating in Columbus, Ohio which he oversaw with Cordell Washington. The DTO was engaged in a large-scale conspiracy involving narcotics distribution, sex trafficking, fraud, and money laundering. The results of the investigation revealed that the DTO was bringing large quantities of illegal narcotics into Columbus, Ohio, which were being sold in and around the Columbus area while simultaneously being used to coerce individuals to engage in sexual activity for profit, from which the DTO benefited. More specifically, the investigation revealed that from approximately 2008 to June 29, 2022, members of the DTO, under the control of either the defendant or Washington, or both, trafficked various controlled substances – including fentanyl, cocaine, crack cocaine, heroin, methamphetamine, marijuana, oxycodone, and alprazolam – to individuals in northern Ohio, Columbus, and West Virginia. This defendant, alongside Washington, remained leaders of the DTO throughout the timeframe it operated, and they brought in numerous others to assist in facilitating the drug activities for the DTO.

The defendant also admitted that he began distributing illegal narcotics, specifically heroin, cocaine, and crack cocaine, as early as 2008 and continued to distribute narcotics out of various residences on the west side of Columbus from approximately 2008 until 2012 when he began working with Washington as a partner. Washington and the defendant both held joint leadership roles in the DTO and would purchase large amounts of different narcotics, including kilogram

quantities of cocaine, methamphetamine, and fentanyl, to repackage for resale from houses they owned, occupied, or rented between 2012 through 2022. The DTO, under the direction of this defendant and Washington, continued to operate by distributing the controlled substances secured by him and Washington from the DTO houses they oversaw through June 29, 2022, when numerous members of the DTO, including this defendant, were arrested.  The defendant admitted that he purchased property at the address of 559 South Burgess Avenue to use as a drug distribution house, which was a residence located directly across the street from, and within 1,000 feet of, Burroughs Elementary School in Columbus, Ohio.

While still operating out of the 559 South Burgess location, among numerous other residences, a federal court order for the interception of wire and electronic communications for telephone lines being utilized by Washington and the defendant was obtained as it related to the investigation into this DTO and its illegal activities.  The defendant admitted that he and Washington would provide "packs" of drugs to Allison Smith, who operated one of the telephones being monitored, at least four times a day which consisted of 10 grams of powder cocaine, 10 grams of fentanyl, 10 grams of crack cocaine, 20 Percocet pills, and 20 Xanax pills.  Smith would sell four packs a day of illegal drugs out of the Burgess Avenue residence, with each pack valued at about $4,600.  Numerous calls were also intercepted where DTO members would purchase illegal narcotics from the defendant directly.  The defendant further admitted that he supplied drugs to other drug traffickers in cities outside Columbus.  In the course of a five-day time span, law enforcement intercepted over 400 grams of fentanyl that was meant for a DTO associate to purchase and further redistribute in the Akron/Canton area.

In addition to distributing illegal narcotics to drug purchasers, the defendant admitted that from at least 2017 through 2022, the DTO provided drugs to numerous adult female women who

frequented the DTO locations. At any given time, approximately ten or more females, deemed "Pat's Girls," were residing within these residences, all of whom were addicted to illegal narcotics that were provided to them by the defendant or other DTO members. Jane Doe One was one of "Pat's Girls." Specifically, the defendant admitted he provided Jane Doe One and other females "fronts" of small amounts of cocaine, crack cocaine, heroin, and/or fentanyl. These "fronts" or "block hits" ensured that Jane Doe One and other females would not be in active drug withdrawal and were able to engage in commercial sex acts. In exchange, Jane Doe One would receive cash payments, and this occurred multiple times a day. Jane Doe One would then return to the DTO residence and provide the defendant and other DTO members with the money she made from the various sex acts. The defendant admitted that Jane Doe One and other females were allowed to remain in the DTO residences controlled by him if they continued to make money for the residence by engaging in sex acts for money; this money would go back to him and/or allow them to pay off the debt from their "front" or "block hit" that he and other DTO members provided. He also admitted that the money made by the DTO came from both the drug and prostitution efforts of individuals like Jane Doe One and that some of the drug-addicted females brought in hundreds of dollars per day.

To legitimize the money made from the DTO, the defendant also admitted that he conspired with Washington and others to establish the "front" businesses Ohio P&C Properties LLC and P&C Construction & Home Repairs, LLC (hereinafter both collectively referred to as "P&C"). The "P&C" businesses served to camouflage the true nature of their illicit operations. In addition, the defendant admitted that the "P&C" businesses attempted to conduct legitimate business activities but would not have existed without the underlying criminal activity they served to disguise.

The final Presentence Investigation Report ("PSR") was disclosed by the Probation Office on February 6, 2025 and sentencing in this matter is scheduled for March 10, 2025.

**PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION**

The United States has reviewed the PSR in this case and submits that the Probation Officer has correctly calculated the advisory sentencing guidelines. According to the Probation Officer's calculations, the advisory guideline range for the defendant is life, based on a total offense level of 43[1], a criminal history category V.

The Probation Officer did not identify any factors that would warrant a departure from the applicable guideline range but did indicate that the Court may want to consider certain facts in determining whether a deviation from the guideline range is appropriate. These factors include that the defendant reported a good upbringing in a middle-class family but became involved in the juvenile justice system when he was 11 years old and remained involved in the justice system since. Within this DTO, he was responsible for the distribution of kilogram quantities of drugs within Central Ohio communities for over 14 years as well as sex trafficking multiple drug addicted women. Noting the upbring of the defendant, in conjunction with the facts of the case outlined above and below, the Government believes the Agreed Sentencing Disposition range of 324-360 months adequately captures both the seriousness of the offense, the defendant's background, as well as other factors this Court is to consider.

**SENTENCING FRAMEWORK AND GUIDELINE CALCULATION**

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guideline range, then

---

[1] The calculation of the defendant's offense level resulted in a total offense level of 49, but pursuant to Chapter 5, Part A (comment, n.2) of the guidelines, if the offense level exceeds 43, the offense level shall be deemed 43.

consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range, along with all of the factors listed in 18 U.S.C. § 3553(a), to determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates the seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

### ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

I. *Acceptance of the Parties Agreed Sentencing Disposition*

As indicated above, the applicable sentencing guideline range for the defendant was properly calculated in the PSR, resulting in an overall guideline recommendation of life incarceration, a term of supervised release of at least ten years on Count One, five years on Count Two, and between one to three years on Count Three, and a fine of $20,000,000 on Count One, and $250,000 on Count Two and Count Three. As the Court is aware, the defendant pled guilty pursuant to an agreed sentencing disposition and plea agreement under Rule 11(c)(1)(C) and the government stands by the terms of the executed Plea Agreement and the Agreed Sentencing Disposition of 324-360 months and a recommended term of supervised release of at least 5 years – of which the government is seeking 10 years or more.

As the government outlines more fully below, the offense conduct is at the most serious end of the spectrum considering all the illegal drugs this defendant is responsible for distributing in conjunction with the addictions and trauma he was responsible for as it related to the drug-addicted sex workers he profited from.   He was the leader of the DTO and the one who started it, over saw it, and profited from it.   Ordinarily, there might not be reason for the kind of downward deviation from the guidelines to which the government has agreed.   Here, however, there is one, and it weighed heavily in favor of the agreed sentencing disposition: the burden the defendant's plea lifted from the victims in this case by having the defendant accept responsibility for his actions. Given the nature of his offense, the defendant's conduct would undoubtedly call for a higher sentence if not for his quick acceptance of responsibility.  The Sentencing Guidelines recognize that defendants who quickly accept responsibility for their actions should receive credit for such, and the government has placed even greater weight on that issue in this case as noted in the Agreed Sentencing Disposition.   Thus, it is this aspect of the defendant's characteristics, his acceptance of responsibility, that the government believes is most significant and justifies the range noted above.

II. *Section 3553(a) Factors*

<u>Subsection (a)(1): Nature and Circumstances of the Offense/ History and Characteristics</u> of the Defendant

While the Court should take into account each of the above factors, (1) through (2)(D), the United States can offer facts in connection with the two phrases included in 18 U.S.C §3553(a)(1), the nature and circumstances of the offense, and the history and characteristics of Defendant. This is a very serious offense as evidenced by the statutory penalties under the statute passed by Congress under 21 U.S.C. § 841(b)(1)(A), a mandatory minimum term of 10 years, up to a maximum term of life imprisonment.  According to the PSR, the defendant is

responsible for an amount of controlled substances of approximately 446,852 kilograms of converted drug weight. Any amount over 90,000 kilograms of converted drug weight goes to the top of the offense level, level 38. From the statement of facts in support of the plea agreement, the Saultz and Washington DTO would sell approximately 40 grams of fentanyl per day. In the year span from June 2021 to June 2022, the organization sold 14.6 kilograms of fentanyl. A conservative estimate of the quantity of cocaine sold by this DTO is 52 kilograms. For cocaine base or crack, the organization sold approximately 112 kilograms.

The amount of controlled substances this defendant distributed, either personally or through the individuals he employed to work for him, is incredibly alarming. The dangers of the vast array of narcotics the DTO distributed also cannot be understated and those substances included fentanyl, cocaine, crack cocaine, heroin, methamphetamine, marijuana, oxycodone, and alprazolam. These drugs are very dangerous, they are highly addictive, and usage of even the smallest amount of these drugs can lead to accidental (or purposeful) overdoses. This is evidenced by several overdoses that occurred within this DTO as learned through the investigation. IN addition, the drugs in this case were distributed outside the Columbus area as well. The defendant helped supply fentanyl to the Canton/Akron area and fentanyl and crack cocaine to the Morgantown, West Virginia area.

The scope of the DTO was extensive, with a numerous individuals filling subordinate roles to Saultz and Washington, who acted as managers. The defendant was the mastermind behind the DTO, an organization that he, quite literally, created. His subordinates were necessary to assist facilitating the drug activities for the DTO. These individuals operated in different residences that sold the illegal drugs directly to customers, and to collect the proceeds of the drug sales for the defendant and Washington. In one seizure alone on June 30, 2022, over one million dollars in

United States currency was seized pursuant to a federal search warrant at the Cargo Storage Facility located at 3935 Westerville Road in Columbus, Ohio, a location the defendant frequented. The day before, over $100,000 was recovered at the personal residence of the defendant as well. The money that the defendant had access too speaks volumes as to the amount of illegal drugs he was selling and further profiting from.

Of the several locations that the DTO used to sell drugs, one was 559 South Burgess Avenue, a residence located directly across the street from, and within 1,000 feet of, Burroughs Elementary School in Columbus, Ohio. This location presented a risk of harm to children, placing elementary school aged children near drugs, drug users, drug dealers and associated violence that can go along with that lifestyle, as well as the dangers with law enforcement intervention. An example of such violence is the beating death of Chris Sloane, a DTO drug runner who was killed by Dustin Speakman at a DTO location supplied by the defendant after an argument over DTO drugs. The danger that this defendant presented to the community, the city, the state of Ohio, and everywhere else his drugs were sold is distressing.

In addition to selling drugs to the standard drug user, this DTO profited from commercial sex workers who spent the money made from commercial sex acts on drugs from the DTO – either repaying a drug debt or purchasing drugs for further use. These sex workers would be allowed to stay at a DTO residence, receive a front of drugs to make them well enough to go and work the street by engaging in commercial sex acts and then return to the house to pay off their debt and purchase more drugs which were used at the house. Much of the money made by the DTO came from both the drug and prostitution efforts of individuals like Jane Doe One as recited in the statement of facts. This was a daily, weekly, monthly, and yearly "rinse and repeat" cycle where the trauma of each drug addicted female was buried under the shame of their vulnerabilities and

addictions – the perfect prey for individuals like the defendant who prioritized profits over the well-being of the individuals they used.

For all of these reasons, a significant sentence is warranted in this case and that recommendation also comes after reviewing the history and characteristics of the defendant. The defendant is 47 years of age. PSR p. 3. He is in a long-term relationship with a co-defendant, Alexis Lewis, and has one child from a previous relationship. PSR ¶¶ 174-175. He attended Everett Elementary School until the 7th grade, and he later earned his GED. PSR ¶ 187. He has no work history outside of the Ohio P&C Properties business which was also partially involved in renting drug houses in this case and served as a front business for his DTO profits. PSR ¶¶ 188-189. In addition, his prior substance abuse history is detailed extensively within the PSR. (PSR ¶ 183-186). He has 11 criminal history points which corresponds to a Category V. PSR ¶¶ 159-161.

The government again submits that the most pertinent of the Section 3553(a) factors, particularly the nature and circumstances of the offense, the statutory purposes of sentencing, and protection of the public require an at least two-decade sentence to ensure the defendant cannot ever harm another individual again through either the sale of drugs or the sale of sex. The recommendation of both the guidelines and the terms of the Plea Agreement is serious, but a sentence within the Agreed Sentencing Disposition range followed by at least 10 years of supervised release will hopefully provide sufficient deterrence to ensure that the defendant does not again become a threat to the community upon his release from incarceration.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the United States respectfully recommends that the Court impose a sentence within the range that was agreed to by the parties in the plea agreement. The United States further submits that the Court should consider a term of supervised

release not less than 10 years, would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes perpetrated by the defendant.

        Respectfully submitted,

        KELLY A. NORRIS
        Acting United States Attorney

        s/Timothy D. Prichard
        TIMOTHY D. PRICHARD (0059455)
        EMILY CZERNIEJEWSKI (IL 6308829)
        Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 28th day of February, 2025 electronically on counsel for the defendant.

s/Timothy D. Prichard
TIMOTHY D. PRICHARD (0059455)
Assistant United States Attorney